## COMMISSIONER OF INTERNAL REVENUE v. BANFIELD.

## BANFIELD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9791.

Circuit Court of Appeals, Ninth Circuit.

Oct. 15, 1941.

1018

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Benjamin M. Brodsky, and Warren F. Wattles, Sp. Assts. to Atty. Gen., for petitioner, Commissioner of Int. Revenue.

Charles E. McCulloch and Thomas B. Stoel, Jr., both of Portland, Or., for petitioner T. H. Banfield.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The proceeding is for a review of a decision of the Board of Tax Appeals on petitions both of the taxpayer and of the Commissioner. The question raised by the taxpayer's appeal is whether the income of a partnership of which he was a member was taxable solely to him or to the extent of one-half thereof, only. The petition of the Commissioner presents the problem whether a loss sustained by the partnership in dealings in grain futures was an ordinary loss or a capital loss.

We consider first the appeal of the taxpayer. The Commissioner assessed against him deficiencies in income taxes for the years 1935, 1936 and 1937, during which time he was a member of the partnership of Collins & Banfield, a firm engaged in wheat farming in the state of Oregon. The partnership operated under a joint adventure contract entered into in 1929 and later clarified by a supplemental agreement. Pursuant to the contract the taxpayer advanced $100,000 as the original capital of the venture, half of which was regarded as a loan to Collins to be used by the latter as his capital contribution. Later, and prior to 1935, the taxpayer made large additional advances. The controlling provisions of the contract, so far as concerns this feature of the controversy, are those contained in paragraphs II and III, as follows:

"II. All sums advanced by T. H. Banfield shall bear interest at 6½% per annum from the time the same are advanced by him and shall be repaid to him from any moneys received from, or on account of the property embraced in the joint adventure, prior to any division of the profits.

"III. All leases, crops, lands and outfit acquired under said Perringer contract, or hereafter acquired in the farming operations conducted by the partners, shall belong equally to the parties hereto, subject only to the repayment of the advances made by Banfield, and the parties are to share equally in all losses or profits, on account of said operations."

During the tax years in question the interest on all advances made by the taxpayer was credited to him on the partnership books, and in each year the interest, exclusive of that allocable to the $50,000 loaned to Collins, exceeded the net income of the partnership as computed without deducting from the gross the amount of such interest. No amounts, however, were paid the taxpayer on account of the interest and there was no actual distribution of profits.

The parties are in agreement that in arriving at the partnership net income the amount of the interest credited to the taxpayer is not a deductible item. As the Board pointed out, it is generally considered that partnership profits credited or paid over as interest on capital contributions of the partners, or salaries paid to them, constitute distributive income of the partnership to the partner entitled to the same. See Parker v. Commissioner, 255 Mass. 546, 152 N.E. 34, 45 A.L.R. 1379; Blake v. Commissioner, 9 B.T.A. 651, 654; Billwiller's Estate v. Commissioner, 2 Cir., 31 F.2d 286. There is no controversy here about that. The dispute is whether, in the light of the terms of the joint adventure agreement quoted above, the partnership net income, computed as aforesaid, is as the Commissioner contends and the Board held, taxable in its entirety as income to the taxpayer, or whether, as the latter claims, but one-half of such income is taxable to him. Hence the argument revolves around the proper interpretation of the contract.

The statute, § 182 of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Acts, page 728, provides that there shall be included in computing the net income of each partner his distributive share of the net income of the partnership, whether distributed to him or not. Presumably, in the absence of a contrary agreement, the partnership net income in this instance would have been taxable to the two partners in equal shares. But the Board determined that by the terms of the contract there was to be no division of profits until after the interest on the taxpayer's advances had been set aside. The taxpayer complains that the Board ignored the language of paragraph III to the effect that "the parties are to share equally in all losses or profits, on account of said operations." He claims that this clause,

read in conjunction with the balance of the paragraph, shows that it was the intention that the partners were to share equally in any profits retained in the business and not actually distributed.

We are not able to agree with the taxpayer. The clause just quoted is not irreconcilable with the very specific provisions of paragraph II. We agree with the view of the Board that the profits in which the partners were to share equally were those in excess of the interest credited to the account of the taxpayer. Since in the years in question there were no partnership profits in excess of that amount, the effect of the agreement is such as to require that the entire net profits credited as interest be treated as the taxpayer's distributive share of the partnership income.

The appeal of the Commissioner presents a more perplexing situation. In its return for 1935 the partnership deducted from gross income $12,480.19 as a loss sustained in dealings in grain futures. In his original determination of a deficiency for that year the Commissioner did not disallow any part of the loss and no issue in that respect was set up in the petition of the taxpayer before the Board. The Commissioner, however, alleged in an amended answer that he had been in error in failing to disallow all of the loss except $2,000, for the reason that it was not an ordinary business loss but had been sustained from the sale or exchange of capital assets. He therefore alleged a further deficiency over and above that asserted in the original notice.

The following written stipulation relating to the subject was before the Board: "During the year 1935 the partnership sustained a loss of $12,480.19, as a result of its dealings in grain futures on grain exchanges. These transactions were handled through brokers. They were marginal transactions. In arriving at the partnership book loss of $21,013.83 for the year 1935 * * * the loss of $12,480.19, so sustained by the partnership from grain futures transactions, was deducted from the partnership gross income for that year."

There was a further stipulation at the hearing to the effect that "no deliveries of wheat were taken under these marginal contracts, and that they were closed out before the end of the year 1935"; that the partnership "neither accepted deliveries nor made deliveries nor consummated those purchases or sales, whatever they were"; and that the partnership "had no inventories either at the beginning or at the close of the year with respect to these marginal transactions." One further fact bearing on the matter was before the Board, namely, that during 1935 the partnership was engaged in operating a wheat farm.

Because of the way in which the question was raised the Board ruled that there is no presumption of the correctness of the Commissioner's determination and that the burden of proof was upon him. This the Commissioner concedes.[1] The Board was of opinion, two members dissenting, that on the facts stipulated the Commissioner failed to sustain the burden. "These facts", said the Board, "are insufficient to indicate whether the transactions were hedging transactions, giving right to deduction of the entire $12,480.19 as an ordinary loss, or were transactions in the nature of sales or exchanges of capital assets". It observed that the stipulation did not disclose, whether the transactions were short sales.

Section 117(b) of the 1934 act, 26 U.S.C. A. Int.Rev.Acts, page 707, defines "capital assets" thus: "For the purposes of this title, 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business." Section 117(e) provides that for the purpose of the act "gains or losses from short sales of property shall be considered as gains or losses from sales or exchanges of capital assets."

In earlier cases[2] cited by the Board it held that certain transactions in futures relating to the business, respectively, of a wheat farmer and a manufacturer of crude cottonseed oil were hedging transactions,

[1] See Rule 32, Rules of the Board of Tax Appeals, 26 U.S.C.A. Int.Rev.Code, following section 5011.

[2] Ben Grote v. Commissioner, 1940, 41 B.T.A. 247; Farmers & Ginners Cotton Oil Co. v. Commissioner, 1940, 41 B.T. A. 1083. The latter decision was later reversed by the Court of Appeals of the Fifth Circuit, Commissioner v. Farmers & Ginners Cotton Oil Co., 120 F.2d 772.

and that losses sustained in them were not capital losses. These holdings, from which several Board members dissented, proceeded on the assumed authority of a memorandum of the general counsel of the Department (G.C.M. 19322) [3] concerning the proper treatment of hedging transactions under the 1934 act. The memorandum relates to the practice of a specific taxpayer, a textile manufacturer, who sought by hedging operations to eliminate speculative risks due to fluctuations in the market price of an essential raw material. The practices discussed were thought to be a form of insurance necessary to conservative business operations.

The departmental rulings on this subject in individual cases are clearly not to be taken, and were not intended to be taken, as authority for the proposition that all dealings in futures related to the business of the taxpayer are to be regarded as true hedges. Compare Commissioner v. Farmers & Ginners Cotton Oil Co., 5 Cir., 120 F.2d 772. As noted above, § 117(e) treats gains or losses from short sales as arising from the sale or exchange of capital assets; and it would seem that an attempted hedge by a wheat grower would ordinarily take the form of a short sale. However, for present purposes we assume that in specific situations grain growers may engage in hedging operations of a kind other than those denominated short sales.

The facts stipulated here are such as to bring the marginal contracts on which the loss was sustained within the general area of capital assets as defined in the statute. Clearly these contracts did not fall within the statutory exceptions relating to stock in trade or to property held by the taxpayer primarily for sale to customers in the ordinary course of his business. Possibly there were special circumstances bringing them within the narrow range of the exception relating to other property properly includable in inventory if on hand at the close of the taxable year; but if so we think it was incumbent on the taxpayer to show that. He knew better than anyone else the precise nature of these transactions, their purpose, and the circumstances in which the operations were carried on, and proof in these respects was readily available to him. We think, in the absence of a showing of special circumstances, that the losses sustained in the transactions described were presumptively capital losses, and that the Board should have so held.

On the appeal of the taxpayer the decision below is affirmed. On that of the Commissioner the decision of the Board is reversed.

---

[3] See, further, G.C.M. 18383 and I.T. 3137, Internal Revenue Cum.Bulletin, 1937-2, pages 244 and 164.