APTOS LAND AND WATER CO. INC., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 103563.   Promulgated May 28, 1942.

*Clyde C. Sherwood, Esq.*, and *John V. Lewis, Esq.*, for the petitioner.
*Harry R. Horrow, Esq.*, for the respondent.

OPINION.

KERN: The first issue for our determination is whether respondent erred in disallowing a deduction taken by petitioner on its income tax return for the fiscal year 1936 in the amount of $16,721.10 as commissions paid for the sale of associate memberships in the Rio Del Mar Country Club, Inc. Respondent argues that this was not an ordinary and necessary business expense of petitioner and that the sales commissions, if deductible by anyone, were deductible only by the Country Club. As the facts disclose, the petitioner received $9.90 on each sale, credited the country club with $9.90 on a running account between the two corporations, and also paid $9.90 to Roth, the broker, as commission for the sale. The Country Club reported as income on its return the $9.90 placed to its credit on the books. It appears that the Country Club did not also include in its income under any theory the $9.90 which petitioner paid to Roth on its behalf. Assuming that the Country Club had considered this latter $9.90 as having been income constructively received, then there is no doubt that the Country Club would have been entitled to claim a like amount as a deduction, for the net result of the sale of each associate membership was to make the Country Club $9.90 richer, to make Roth $9.90 richer, to make petitioner $9.90 poorer, and to leave the new member $9.90 poorer. But the equitable theory of constructive receipt is one to be sparingly applied and there does not appear to be sufficient ground for saying that the transaction should have been treated by the Country Club in any method other than was done, especially when the result for purposes of taxation would remain the same. Thus, we are not prepared to say that the deduction was available to the Country Club only, as respondent asserts.

Petitioner did not advertise its subdivided properties for sale, although these properties were apparently "out of the way." It depended for its sales upon prospective purchasers becoming interested in the location mainly because of the existence of a going country club in the vicinity. But, since the properties were out of the way, this necessitated getting prospects to become interested in the club. Many realty concerns sell their lands in this manner, centering their sales talks around clubs maintained by them. It appears from the record that the reason petitioner was willing to pay the expenses of selling associate memberships in the club was to be sure of getting prospects to the location so that they might see the lots for sale and petitioner's

sales force could then start their attempt to make sales. It is reasonable to anticipate that anyone who has paid $9.90 just for the privilege of entering upon the ground of a club will take advantage of that privilege at least once. That was all that petitioner anticipated; and that was why petitioner undertook to sell the memberships and pay the sales commissions.

Balancing the outlay against the benefits to be reasonably expected, the business interests of the petitioner were probably advanced. At least, it can not be said that it would be unreasonable or extraordinary to expect them to be advanced. Each sale to an associate member proved the worth of this substitute for ordinary advertising.

Each case involving ordinary and necessary business expenses must be decided upon its own peculiar facts. Upon an analysis of the instant facts, we sustain petitioner's contention on this issue.

The remaining issue in this proceeding is whether respondent correctly disallowed in full certain losses claimed by the petitioner in the fiscal year 1937 as deductions on its income tax return. These losses arose from two transactions involving the sale of land and a building by the petitioner to Miller and Monroe, the only two stockholders of petitioner, jointly.

Respondent contends that his disallowance of these losses should be sustained under the doctrine of *Higgins* v. *Smith*, 308 U. S. 473. In that case the transaction was the reverse of the transaction in the instant case. There, the stockholder, who owned all of the corporation's stock, transferred properties to the corporation in order to avail himself individually of a deductible loss. The transaction took place prior to the enactment of section 24 (a) (6), but, nevertheless, the Supreme Court held that the taxpayer's retention of control of the properties transferred prevented his sustaining a true loss.

The Court held in that case that "dominion and control is so obvious in a wholly owned corporation as to require a peremptory instruction that no loss in the statutory sense could occur upon a sale by a taxpayer to such an entity"; that, although title passed to the corporation, control over the property was retained by the sole stockholder and thus there was "not enough of substance in such a sale finally to determine a loss."

If the Supreme Court had limited its opinion to a holding that a transfer by an individual stockholder to a wholly owned corporation was not a sale giving rise to a loss within the meaning of the revenue act because of the resulting retention of control over the property by the transferor, we might be able to distinguish that case, both as to holding and *rationale* from the instant proceeding, since in this case the transfer was from the corporation to its two stockholders and,

obviously, there could be no retention of control by the transferor corporation. However, the Court went ahead to discuss *Burnet* v. *Commonwealth Improvement Corporation*, 287 U. S. 415, in which a gain was held to have been realized by a corporation upon the sale of property to its sole stockholder. In reconciling its holding in that case with the holding in the *Smith* case, the Court made use of the following language:

> * * * In the *Commonwealth Improvement Company* case, the taxpayer, for reasons satisfactory to itself voluntarily had chosen to employ the corporation in its operations. A taxpayer is free to adopt such organization for his affairs as he may choose and, having elected to do some business as a corporation, he must accept the tax disadvantages.
>
> On the other hand, the Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. It is command of income and its benefits which marks the real owner of property.

The implication of this dictum seems unmistakably to the effect that when a corporation, formed for the purpose of carrying on a transaction or holding property as the corporate *alter ego* of its sole stockholder, makes a purported "sale" of property to such stockholder for the purpose of establishing a tax loss, the respondent can disregard the transaction as unreal, because, in reality, there has been no change in the ownership of the property, the transferee having had command over the property prior to the transfer by virtue of being the sole stockholder of the transferor corporation.

This being our judgment as to the implications of the opinion of the Supreme Court in *Higgins* v. *Smith*, *supra*, we are constrained to uphold the determination of respondent on this issue.

The fact that petitioner had two stockholders instead of one we consider to be immaterial. It is apparent from an examination of the record in this case and the two related cases, that Miller and Monroe acted together in all respects and for all practical purposes had a community of interests and a uniformity of action.

The reasons given by the petitioner for having transferred the properties to Miller and Monroe are too shallow to be accepted by us as reasonable explanations for its actions. Miller testified that the petitioner thought the Federal Government was going to buy the 978.332 acres for about $25 an acre and, because petitioner owed an account to its two stockholders, it was decided that they (the stockholders) should make the sale in order to realize some cash on their account.

If petitioner believed, as testified by Miller, that the Government was going to offer approximately $25,000 for the large tract, there would be nothing gained by having previously transferred the property at the same price to Miller and Monroe. Had petitioner retained the property, sold to the Government at the allegedly anticipated figure, and turned over the proceeds to Miller and Monroe and debited their accounts in such amount, the same result would have been arrived at without the necessity for this book transfer of the property. The explanation for the transfer of the administration building, i. e., to shift the mortgage burden, also appears to hold no weight. Miller testified that the reason petitioner acquired this latter property in the first place was because Penproco was in danger of losing it through foreclosure proceedings. He also testified that Miller and Monroe acquired it to save petitioner from the same fate. We conclude, however, that the real reason for both these transfers was the establishment of losses in the fiscal year 1937 for purposes of tax avoidance.

Having held on this question in favor of respondent, and to the effect the under the *Smith* case there was for tax purposes in reality no sale, it is unnecessary to consider the question of whether the transaction is subject to the provisions of section 24 (a) (6) of the Revenue Act of 1934, set out in the margin.[1] Petitioner has advanced the rather technical argument that the use of the terms "individual" and "more than 50 per centum in value of the outstanding stock" precludes the application of that section to the instant facts. It is now unnecessary to determine whether we agree with the strict construction which petitioner urges should be given to the statute.

Neither is it necessary to consider the question of whether the property, the legal title to which was transferred by petitioner, constituted capital assets or property held for sale to customers in the ordinary course of petitioner's business.

*Decision will be entered under Rule 50.*

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deductions shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(6) Loss from sales or exchanges of property, directly or indirectly, (A) between members of a family, or (B) except in the case of distributions in liquidation, between an individual and a corporation in which such individual owns, directly or indirectly, more than 50 per centum in value of the outstanding stock. For the purpose of this paragraph—(C) an individual shall be considered as owning the stock owned, directly or indirectly, by his family; and (D) the family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants.