*Decision will be entered under Rule 50.*

STEWART SILK CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10642. Promulgated August 13, 1947.

*Kenneth Carroad, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: Although the tax year involved is 1941, the facts giving rise to the deficiencies occurred in 1939, and the issue

concerns the amount of petitioner's net operating loss in 1939, for purposes of carry-over to the tax year. The parties have stipulated that, if respondent correctly determined that petitioner's loss on the futures transactions in 1939 was a capital loss, subject to the $2,000 limitation of section 117(d) of the Internal Revenue Code, the deficiencies determined are proper, but that if, as petitioner contends, those transactions were hedges, the loss of $101,344.97 is allowable in full. This agreement is in accord with the principles of such decisions as *Ben Grote*, 41 B. T. A. 247; *Kenneth S. Battelle*, 47 B. T. A. 117; *Estate of Dorothy Makransky*, 5 T. C. 397; affd. (C. C. A., 3d Cir.), 154 Fed. (2d) 59; and *Commissioner* v. *Farmers & Ginners Cotton Oil Co.*, 120 Fed. (2d) 772.

We think the petitioner is right in contending that its futures transactions were hedges, and we have so found. The essence of hedging, as pointed out in the *Farmers & Ginners* case, *supra*, is the maintenance of an even or balanced market position. It is a form of price insurance—often the only kind available for the purpose of avoiding the risk of changes in the market price of a commodity. The reason the transactions involved in that case were held not to be hedges was that the taxpayer's raw materials had been purchased, processed, sold, and delivered to its customers at a loss before the futures transactions were even entered into and the futures were in a different commodity. At no point of time was there any concurrence of the risk on the actuals with that on the futures. The risk on the actuals was over, that transaction had been completed and closed, and consequently there was no risk to hedge against when the futures were bought.

Hedging transactions in commodities may take several different forms, depending upon the particular circumstances in which the hedger finds himself and the type of risk he seeks to avoid. For example, if a manufacturer or processor of raw materials is short on inventory and makes sales of his finished product for forward delivery, the appropriate hedging transaction in that instance would be the purchase of raw material futures at or about the time he makes the sale. See G. C. M. 17,322, XV-2, C. B. 151, 152. It serves to fix the cost of raw materials in the finished product and to assure him a certain margin of profit, regardless of market fluctuations. The futures purchase offsets his forward sales commitments. Such would have been the transactions involved in the *Makransky* case, *supra*, but for the fact that the taxpayer there had not made any forward commitments for sales of its manufactured product. There was no fixed risk for its purchase of raw material futures to offset, and it was accordingly held that the futures were not balancing transactions and did not qualify as hedges.

On the other hand, if a manufacturer wishes to hedge against either the purchase of spot goods or actuals already on hand in inventory, the

appropriate transaction would be, not the purchase, but the sale of futures. That is what the instant petitioner did. The sale of futures against inventory or against actuals purchased and added to inventory serves to freeze or fix the value of the raw materials of the manufacturer. Thus, loss of inventory value is offset by gain on the futures sales, and conversely loss on the futures sales is offset by rise in inventory value, which will be realized upon the sale of the manufactured product.

Petitioner makes no contention that it sought to hedge its entire market risk 100 per cent. And, we do not understand that in order to constitute a true hedge it was necessary for petitioner to cover its entire inventory and offset every purchase of actuals with a corresponding futures contract. Actuals already on hand or purchased and added to inventory may be hedged entirely or in part; and if only in part, the protection against market fluctuations is obtained *pro tanto*. Under the rules of the Commodity Exchange relating to margin requirements, one definition of a hedging transaction, which covers the instant case, is as follows:

A sale of any commodity for future delivery on Commodity Exchange, Inc., to the extent that such sale is offset in approximate quantity *by the ownership or purchase* of the same cash commodity or related commodity. [Italics supplied.]

Though petitioner purchased only 385 bales of spot goods during the same period it sold the 780 bales of futures, it at all times "owned" and had on hand in inventory more than enough actuals to cover all its futures commitments on the exchange. That it is not necessary that the futures transactions be entered into simultaneously with the attaching of the risk sought to be protected against, and in exactly equivalent quantities, is recognized in G. C. M. 17,322, *supra*, which states: "Futures contracts representing true hedges against price fluctuations in spot goods are not speculative transactions though not concurrent with spot transactions." See also *Kenneth S. Battelle*, *supra*. It is enough that the offsetting transaction be made while the risk is extant.

Here the petitioner had a definite existing risk when it sold the futures. A sharp decline in the market price of raw materials could have produced a disastrous loss in inventory value unless offset by hedges. Petitioner's factor, Stern, was unwilling to finance the purchase of such additional spot goods as might be needed for continued manufacturing operations unless the risk could be lightened. Stern insisted that with the purchase of additional spot goods petitioner sell futures to the extent of about one-third of its holdings in order to obtain, to that extent, protection from the hazards of market fluctuations. It was contemplated that the futures contracts would be closed out by offsetting purchase contracts, as a corresponding portion of

the "frozen" inventory was disposed of in the ordinary course of business. But, with the outbreak of war in September, the market went wild and petitioner was forced to close out all its futures sales as best it could. It had difficulty in obtaining offsetting purchase contracts and had to cover in part by actual delivery from its inventories.

Unlike the *Makransky* and the *Farmers & Ginners* cases, *supra*, petitioner's risk on its actuals was open while its futures transactions were open. Thus, its dealings in futures were offsetting or balancing transactions, and they were clearly entered into for the purpose of business risk protection rather than speculation. We hold that they were hedges, and that the loss incurred therein is deductible in full.

*Decision will be entered under Rule 50.*