**HOGG v. ALLEN, Collector of Internal Revenue (six cases).**

**Civ. Nos. 694–696, 762–764.**

United States District Court
M. D. Georgia, Macon Division.

May 5, 1952.

John E. Feagin, G. Scott Hogg, Atlanta, Ga., W. A. Bootle and Carlisle & Bootle, all of Macon, Ga., for plaintiff.

John P. Cowart, U. S. Atty., Macon, Ga., Lyle M. Turner, Sp. Asst. to Atty. Gen., for defendant.

DAVIS, Chief Judge.

The foregoing six cases were consolidated for trial. The three plaintiffs are Gordon Scott Hogg, Jack B. Hogg and Robert H. Hogg, Jr. Each plaintiff has two suits against the Collector of Internal Revenue. The first series of suits involve the years 1942 and 1943 (the consolidated year), and are Civil Actions 694, in which Gordon Scott Hogg is plaintiff, 695 in which Jack B. Hogg is plaintiff, and 696 in which Robert H. Hogg, Jr. is plaintiff. The second series of suits involve the years 1944 and 1945, each suit being in two counts, Count One involving the year 1944 and Count Two the year 1945, and are Civil Actions 762, in which Gordon Scott Hogg is plaintiff, 763 in which Jack B. Hogg is plaintiff, and 764 in which Robert H. Hogg, Jr. is plaintiff.

One question of fact and law is common to all six of the suits, namely, whether or not Mrs. Grace L. Hogg, the mother of the three plaintiffs, in good faith joined together with the three plaintiffs, and acting with a business purpose, engaged in the then present conduct of a partnership enterprise known as R. H. Hogg & Company, during and throughout the period covered by each suit. A jury was impanelled, and it was stipulated that the jury would try the partnership issue as to all of said suits, and that all other questions of law and fact were reserved to be decided by the Court. The jury decided the partnership issue in favor of the plaintiffs in all of the six cases. These findings of fact and conclusions of law need not, therefore, deal with the partnership issue, but only with the remaining issues.

Upon consideration of the pleadings, evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

1.

The plaintiffs are residents of Fulton County, Georgia. The defendant is the duly commissioned, qualified and acting Collector of Internal Revenue for the State of Georgia, and was such at the time the taxes in controversy were assessed and collected, and at all times thereafter. The taxes in controversy were paid by the plaintiffs to the defendant. These complaints are brought under the law of the United States for the recovery of income taxes alleged to have been erroneously and illegally collected from plaintiffs by the Defendant.

2.

Prior to March 15, 1943, Gordon Scott Hogg filed his individual income tax return for the calendar year 1942, in which he showed a net income of $28,651.44. On or about January 2, 1946, Gordon Scott Hogg filed his individual income tax return for the calendar year 1943, in which he reported a net income for income tax purposes of $63,907.32, and a net income for victory tax purposes of $63,760.77, and a total income and victory tax for 1942 and 1943 of $41,452.14, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Gordon Scott Hogg for federal income and victory taxes in the amount of $17,166.83 for the taxable year ended December 31, 1943, and on or about May 14, 1947, the Defendant

demanded of Gordon Scott Hogg payment of said deficiency and of interest thereon in the amount of $2,783.38.

### 3.

On or about October 29, 1946, Mrs. Grace L. Hogg, mother of the three plaintiffs, at the request of the Commissioner of Internal Revenue, executed and filed Treasury Form 873, designated "Acceptance of Proposed over-assessments" in her favor.

For year ended December 31,
1943 ....................... $35,025.41
For year ended December 31,
1944 ....................... $42,443.25
For year ended December 31,
1945 ....................... $29,002.96

Making a total of ........ $106,471.62

With all reservations of her right to claim her partnership share of income from R. H. Hogg & Company.

### 4.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of said total sum of $106,471.62 in part-payment of the said principal deficiency assessment of $17,166.83.

### 5.

On or about September 4, 1947, Gordon Scott Hogg paid to defendant the sum of $4,421.56, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $12,745.27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

### 6.

The only basis and reasons relied upon by the Commissioner of Internal Revenue for assessing said deficiency was as alleged in Paragraph 17 of Civil Action 694, and Gordon Scott Hogg, by his pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner for the years 1942 and 1943, except that he properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, and properly challenged and questioned his liability for any of said interest for reasons hereinafter stated.

### 7.

Gordon Scott Hogg did not pay the claimed interest of $2,783.38 or any portion thereof, and the Court finds as a fact that he did not owe any of said interest because of the fact that the validity of the partnership has now been established, and there was, therefore, no deficiency upon which to assess interest. The Court finds as a further fact that Gordon Scott Hogg, as contended by him, is a veteran of World War II and was in military service from February 5, 1942 through October 20, 1945, and was continuously outside the Americas from May 27, 1943 to August 10, 1945, and that his ability to pay said taxes during all of said two periods was materially impaired by reason of such service.

### 8.

Prior to March 15, 1943, Jack B. Hogg filed his individual income tax return for the calendar year 1942, in which he showed a net income of $30,135.57. Prior to April 22, 1946, Jack B. Hogg filed his individual income tax return for the calendar year 1943, in which he reported a net income for income tax purposes of $63,729.33, and a net income for victory tax purposes of $63,582.09, and a total income and victory tax for 1942 and 1943 of $41,535.77, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Jack B. Hogg for Federal income and victory taxes in the amount of $19,046.31 for the taxable year ended December 31, 1943. On or about May 14, 1947, defendant demanded of Jack B. Hogg payment of said deficiency and of interest thereon in the amount of $3,088.11.

### 9.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of said total sum of $106,471.62 in part-payment of the said principal deficiency assessment of $19,046.31.

### 10.

On or about August 29, 1947, Jack B. Hogg paid to defendant the sum of $6,301.04, which paid in full the principal of

the said deficiency assessment, if the Treasury Department applied said $12,745.27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

11.

Said deficiency assessment of $19,046.31 is attributable solely to the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, except only insofar as Jack B. Hogg understated his income in 1943 by $2,184.91 through error in showing the income of Gordon Scott Hogg as that of Jack B. Hogg.

12.

Jack B. Hogg did not pay the claimed interest of $3,088.11 or any portion thereof, and the Court finds as a fact that he did not owe interest in that amount because of the fact that the validity of the partnership has now been established, and there was, therefore, a deficiency only with respect to said item of $2,184.91 upon which to assess interest. The Court finds as a further fact that Jack B. Hogg is a veteran of World War II and was in military service from April 7, 1942 through April 10, 1946, and was continuously outside the Americas from February 14, 1944 to January 1, 1946, and his ability to pay said taxes during all of said two periods was materially impaired by reason of such service.

13.

The only basis and reasons relied upon by the Commissioner of Internal Revenue in assessing said deficiency was as alleged in Paragraph 17 of Civil Action 695, and by taxing to Jack B. Hogg said item of $2,184.91 and Jack B. Hogg, by his pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner of Internal Revenue for the years 1942 and 1943, except that he properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, and properly challenged and questioned his liability for any of said interest for reasons hereinafter stated.

14.

Prior to March 15, 1943, Robert H. Hogg, Jr. filed his individual income tax return for the calendar year 1942, in which he showed a net income of $36,465.47. Prior to May 15, 1944, Robert H. Hogg, Jr. filed his individual income tax return for the calendar year 1943, in which he reported the net income for income tax purposes of $72,893.18, and a net income for victory tax purposes of $74,318.78, and a total income and victory tax for 1942 and 1943 of $49,340.09, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Robert H. Hogg, Jr. for Federal income and victory taxes in the amount of $17,694.87 for the taxable year ended December 31, 1943, and on or about May 14, 1947, defendant demanded of Robert H. Hogg, Jr. payment of said deficiency and of interest thereon in the amount of $2,868.99.

15.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of the total of $106,471.62, referred to in Finding of Fact No. 3, in part-payment of said principal deficiency assessment of $17,694.87.

16.

On or about December 23, 1946 Robert H. Hogg, Jr. paid to defendant all of said interest of said $2,868.99 and on or about August 29, 1947, Robert H. Hogg, Jr. paid to defendant the sum of $4,949.60, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $12,745.27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

17.

Said deficiency assessment of $17,694.87 principal and $2,868.99 interest is attributable solely to the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership.

16

**18.**

The only basis and reasons relied upon by the Commissioner of Internal Revenue in assessing said deficiency was as alleged in Paragraph 16 of Civil Action 696, and Robert H. Hogg, Jr., by his pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner of Internal Revenue for the years 1942 and 1943 except that he properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership.

**19.**

On or about January 2, 1946, Gordon Scott Hogg filed his individual income tax return for the calendar year 1944, in which he showed a net income of $76,496.06 and a total income tax of $48,913.84, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Gordon Scott Hogg for Federal income taxes in the amount of $38,550.40 for the taxable year ended December 31, 1944, and on or about May 14, 1947, the defendant demanded of Gordon Scott Hogg payment of said deficiency and of interest thereon in the amount of $3,937.42.

**20.**

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of the total sum of $106,471.-62, referred to in Finding of Fact No. 3, in part-payment of said principal deficiency assessment of $38,550.40.

**21.**

On or about August 29, 1947, Gordon Scott Hogg paid to defendant the sum of $25,805.13, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $12,745.27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

**22.**

On or about May 1, 1946, Jack B. Hogg filed his individual income tax return for the calendar year 1944, in which he showed a net income of $76,451.70 and a total income tax of $48,876.58, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Jack B. Hogg for Federal income taxes in the amount of $40,055.66 for the taxable year ended December 31, 1944, and on or about May 14, 1947, the defendant demanded of Jack B. Hogg payment of said deficiency and of interest thereon in the amount of $4,091.16.

**23.**

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of the total sum of $106,471.-62, referred to in Finding of Fact No. 3, in part-payment of said principal deficiency assessment of $40,055.66.

**24.**

On or about August 29, 1947, Jack B. Hogg paid to defendant the sum of $27,-310.39, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $12,745.27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

**25.**

On or about March 15, 1945, Robert H. Hogg, Jr. filed his individual income tax return for the calendar year 1944 in which he showed a net income of $90,628.42 and a total income tax of $56,550.51, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Robert H. Hogg, Jr. for federal income taxes in the amount of $45,449.67 for the taxable year ended December 31, 1944, and on or about May 14, 1947, defendant demanded of Robert H. Hogg, Jr. payment of said deficiency and of interest thereon in the amount of $4,642.09.

(a) By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $12,745.27 of the total sum of $106,471.-62, referred to in Finding of Fact No. 3, in part-payment of said principal deficiency of $45,449.67.

(b) On or about September 4, 1947, Robert H. Hogg, Jr. paid to defendant the sum of $32,704.40, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $12,745.-27, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made; and on or about December 23, 1946, Robert H. Hogg, Jr. paid to the defendant all of said interest of $4,642.09.

26.

The only basis and reasons relied upon by the Commissioner of Internal Revenue for assessing said deficiencies for said calendar year 1944 against Gordon Scott Hogg was as alleged in Paragraph 18, Count 1 of Civil Action 762, and for the deficiencies against Jack B. Hogg, as alleged in Paragraph 18, Count 1 of Civil Action 763, except only insofar as Jack B. Hogg understated his income in 1944 by $1,640.03 through error in showing the income of Gordon Scott Hogg as that of Jack B. Hogg, and for the deficiencies against Robert H. Hogg, Jr., as alleged in Paragraph 18, Count 1 of Civil Action 764. Gordon Scott Hogg and Jack B. Hogg, by their pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner for the year 1944, except that they properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, their alleged liability for any of said interest for reasons stated in Findings of Fact Nos. 7 and 12, and the Commissioner's determinations in reference to 600 shares of American Distilling Company stock, and the rights to purchase whiskey under 50 additional shares of American Distilling Company stock. Robert H. Hogg, Jr., by his pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner for the year 1944 except that he properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, and the Commissioner's determinations in reference to 600 shares of American Distilling Company stock and the rights to purchase whiskey under 50 additional shares of American Distilling Company stock, including his determination to the effect that with respect to said 600 shares, Robert H. Hogg, Jr. realized a short term capital gain of two-thirds of the profit resulting from the sale of said shares by him to the partnership.

27.

In making the adjustments with respect to the calendar years 1944 and 1945, the Commissioner of Internal Revenue treated as a long term capital loss an item and expenditure of $49,429.59, representing the difference between the amount paid by the partnership for 600 shares of stock of American Distilling Company and the sales price of the stock after the exercise by the partnership of a purchase privilege to buy whiskey. The partnership had deducted the full expenditure of $49,460.79, as an ordinary and necessary expense of doing business, and as an ordinary loss incurred in business, while the Commissioner treated all the sum as a long term capital loss, except only $31.20, representing taxes on sale of stock. In making said adjustments, the Commissioner treated as a short term capital loss an item and expenditure of $4,000, representing an expenditure by the partnership for 50 "rights" (Purchase privileges) to secure whiskey from the American Distilling Company at $80 per right. Said item was deducted by the partnership as an ordinary and necessary expense of doing business, and as an ordinary loss incurred in business.

28.

In making the adjustments in the return of Robert H. Hogg Jr. for the calendar year 1944, the Commissioner, after treating the expense of the American Distilling Company for whiskey procurement as a capital transaction, assessed said taxpayer with respect to the contribution of 600 shares of American Distilling Company stock in kind to said partnership as being a closed transaction at the time of said contribution in kind, and, therefore, taxed said taxpayer upon the theory of a short term gain of two-thirds of the profit realized by him from the sale of said shares by him to said partnership, whereas, Robert H. Hogg, Jr. claims that the Commissioner was in error in disallowing to him said profit as a

long term capital gain, he having acquired said shares on or prior to November 8, 1943 and having contributed said shares in kind to said partnership on February 21, 1944, and claiming that this was not a closed transaction giving rise to gain or loss until said shares were sold by the partnership in December, 1944.

### 29.

The Court finds the facts with respect to said 600 shares of American Distilling Company stock and the rights to purchase whiskey under the additional 50 shares of said stock to be as follows:

(a) During all times material to this case, R. H. Hogg & Co., said partnership, was engaged in the wholesale whiskey business.

(b) A principal source of supply to said partnership was the American Distilling Company, a large corporation doing a nationwide and international business.

(c) During all times material to this case, whiskey was in extremely short supply because of wartime restrictions against the use of grain by distilleries, and the sale thereof was subject to strict price controls.

(d) Robert H. Hogg, Jr., prior to November 8, 1943, purchased 600 shares of American Distilling Company stock at a cost to him of $39,736.43; he contributed the same in kind to said partnership on February 21, 1944, and his capital account on the books of the partnership was credited therefor in the amount of $66,000, which was the then fair market value of said stock.

(e) On February 21, 1944, the said partnership purchased the said 600 shares from Robert H. Hogg, Jr. for the sole purpose of exercising a stockholder's privilege under which whiskey could be procured under a purchase plan covered by trust indentures issued by American Distilling Company and then in effect.

(f) At substantially the same time, said partnership purchased for $4,000 the whiskey purchase rights appurtenant to 50 additional shares of American Distilling Company stock referred to in the evidence as the Stiga stock.

(g) The sole purpose of said partnership in purchasing said 600 shares and said purchase privileges under said 50 shares was to enable itself to exercise the whiskey purchase privileges appurtenant to said shares and thereby acquire whiskey as a part of its inventory for resale.

(h) Said partnership did not acquire or hold said stock or said rights as an investment or as a capital asset or for speculation, but acquired and held the same primarily for sale to its customers in the ordinary course of its trade or business; it did not carry the same on its books as an investment or as a capital asset; it could not have purchased the whiskey allocable to said shares and rights from American Distilling Company without having acquired said shares and rights; it exercised the whiskey purchase privileges appurtenant to said 600 shares and appurtenant to said Stiga shares and rights; it never owned the Stiga shares but accepted a transfer of them to its name solely for the purpose of being able to exercise the whiskey purchase rights thereunder, and under an agreement to re-transfer the shares to Stiga after the exercise of said rights; it did so re-transfer said Stiga shares after the exercise of the rights appurtenant to said Stiga shares; it received nothing further from the Stiga stock than the privilege of exercising the whiskey purchase rights thereunder; it sold the 600 shares on the open market after exercising the whiskey purchase privilege thereunder and received therefor only $16,539.21, the then market value of said shares, the dates of such sale being between December 6, 1944 and December 12, 1944; the amount of money expended by the partnership to procure the purchase privileges under said 600 shares and under the 50 Stiga shares were a part of the cost to R. H. Hogg & Company of whiskey purchased to be included in inventory for resale and was an ordinary and necessary expense incurred in its usual business; the partnership caused to be processed and bottled the whiskey procured through all of said purchase privileges, and actually received said whiskey inventory at various intervals in the ordinary course of its business, resold the bottled whiskey to its normal and regular customers in the usual and ordinary course of its trade, realizing profit which resulted from the sale

of said whiskey and paid the full tax due upon such profits as ordinary income. Considering all the factors and circumstances, said shares and rights were held by the partnership primarily for sale to customers in the ordinary course of business.

30.

On or about April 12, 1946, Gordon Scott Hogg filed his individual income tax return for the calendar year 1945, in which he showed a net income of $44,257.03 and a total income tax of $23,645.06, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Gordon Scott Hogg for federal income taxes in the amount of $10,690.46, for the taxable year ended December 31, 1945, and on or about May 14, 1947, the defendant demanded of Gordon Scott Hogg payment of said deficiency and of interest thereon in the amount of $450.46.

31.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized the defendant to apply $10,000 of said total sum of $106,-471.62, mentioned in Finding of Fact No. 3, in part-payment of said principal deficiency assessment of $10,690.46.

32.

On or about August 29, 1947, Gordon Scott Hogg paid to defendant the sum of $690.46, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $10,000, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made.

33.

On or about May 1, 1946, Jack B. Hogg filed his individual income tax return for the calendar year 1945, in which he showed a net income of $59,012.23 and a total income tax of $34,959.54, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Jack B. Hogg for federal income taxes in the amount of $11,459.24 for the taxable year ended December 31,

1945, and on or about May 14, 1947, the defendant demanded of Jack B. Hogg payment of said deficiency and of interest thereon in the amount of $482.86.

34.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized defendant to apply $10,000 of said total sum of $106,471.62, mentioned in Finding of Fact No. 3, in part-payment of said principal deficiency assessment of $11,459.24.

35.

On or about September 4, 1947, Jack B. Hogg paid to defendant the sum of $1,459.-24, which paid in full the principal in said deficiency assessment, if the Treasury Department applied said $10,000, as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said assessment was not made.

36.

On or about April 12, 1946, Robert H. Hogg, Jr. filed his individual income tax return for the calendar year 1945, in which he showed the net income of $77,470.46 and a total income tax for said year of $47,-457.83, which amount was duly paid within the time allowed by law. On or about May 9, 1947, the Commissioner of Internal Revenue made a deficiency assessment against Robert H. Hogg, Jr. for federal income taxes in the amount of $12,708.60 for the taxable year ended December 31, 1945, and on or about May 14, 1947, the defendant demanded of Robert H. Hogg, Jr. payment of said deficiency and of interest thereon in the amount of $535.50.

37.

By letter dated August 27, 1947, Mrs. Grace L. Hogg authorized the defendant to apply $10,000 of said total sum of $106,471.-62, mentioned in Finding of Fact No. 3 in partial payment of the said principal deficiency assessment of $12,708.60.

38.

On or about September 4, 1947, Robert H. Hogg, Jr. paid to the defendant the sum of $2,708.60, which paid in full the principal of said deficiency assessment, if the Treasury Department applied said $10,000,

as authorized by Mrs. Grace L. Hogg, or constituted a partial payment in the event said application was not made; and on or about December 23, 1946, Robert H. Hogg, Jr. paid to defendant the sum of $488.92 as interest claimed on said alleged deficiency.

### 39.

The only basis and reasons relied upon by the Commissioner of Internal Revenue for assessing said deficiencies for said calendar year 1945 against Gordon Scott Hogg was as alleged in Paragraph 17, Count 2 of Civil Action 762, and for the deficiencies against Jack B. Hogg, as alleged in Paragraph 17, Count 2 of Civil Action 763, and for the deficiencies against Robert H. Hogg, Jr., as alleged in Paragraph 17, Count 2 of Civil Action 764.

Gordon Scott Hogg and Jack B. Hogg, by their pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner for the year 1945 except that they properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, their alleged liability for any of said interest for reasons stated in Findings of Fact Nos. 7 and 12 and the Commissioner's determinations in reference to 600 shares of American Distilling Company stock and the rights to purchase whiskey under 50 additional shares of American Distilling Company stock. Robert H. Hogg, Jr., by his pleadings and evidence, raised no issue as to any of the adjustments made by the Commissioner for the year 1945, except that he properly challenged and questioned the Commissioner's refusal to recognize Mrs. Grace L. Hogg as a partner in said partnership, and the Commissioner's determinations in reference to 600 shares of American Distilling Company stock and the rights to purchase whiskey under 50 additional shares of American Distilling Company stock. All three plaintiffs are entitled to the benefit of the adjustment mentioned in Paragraphs 17–A–(3) of Counts Two of Civil Actions 762, 763 and 764, (crediting partnership with error in pricing King James Whiskey, $624).

### 40.

With respect to each taxable year involved, a proper claim for refund was duly filed with the Commissioner of Internal Revenue, and the Commissioner rendered a decision thereon rejecting such claim, or more than 6 months elapsed between the date of the filing of such claim and the date of filing the complaint herein with respect to such taxable year.

### Conclusions of Law

### 1.

The Court has jurisdiction of the parties and subject-matter.

### 2.

█ Neither of the veterans, Gordon Scott Hogg nor Jack B. Hogg, owes any interest during or with respect to the respective periods during which they were continuously outside the Americas, and the next 90 days thereafter. 26 U.S.C.A. 3804(a).

### 3.

█ Neither of the veterans owes any interest during or with respect to the respective periods during which they were in military service and the next six months thereafter. 50 U.S.C.A.Appendix, § 573. See Boone v. Lightner, 319 U.S. 561, 63 S. Ct. 1223, 87 L.Ed. 1587. See Fishgold v. Sullivan Drydock and Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230. See also Le Maistre v. Leffers, 333 U.S. 1, 68 S.Ct. 371, 373, 92 L.Ed. 429. See also Epley v. Commissioner of Internal Revenue, 5 Cir., 183 F.2d 1020.

### 4.

█ This question of interest is moot unless a recomputation of the taxes resulting from adjustments made by the Commissioner of Internal Revenue and not questioned by the plaintiffs should result in some deficiency. In the event such recomputations should disclose deficiencies, the veterans, Gordon Scott Hogg and Jack B. Hogg, would not owe any interest on such deficiencies with respect to the periods of their military service, and the statutory periods thereafter.

**5.**

The partnership's net outlay for 600 shares of American Distilling Company stock, to wit, $49,460.79, and its net outlay for the Stiga rights, to wit, $4,000, are deductible in full upon its income tax returns in 1944, as an ordinary and necessary expense incurred in carrying on its trade and business under Section 23(a)(1) of the Internal Revenue Code, 26 U.S.C.A. § 23(a)(1); as a loss not compensated for by insurance or otherwise incurred in trade or business, under Section 23(e)(1) of the Internal Revenue Code, and comes within the exclusory clauses of Section 117(a)(1) of the Internal Revenue Code, 26 U.S.C.A. § 117(a)(1). See Commissioner of Internal Revenue v. The Hub, Inc., 4 Cir., 68 F.2d 349; Aptos Land & Water Co., Inc., v. Commissioner of Internal Revenue, 46 B.T.A. 1232; Commissioner of Internal Revenue v. Pittsburgh Athletic Co., 3 Cir., 72 F.2d 883; Helvering v. Community Bond & Mortgage Corp., 2 Cir., 1935, 74 F.2d 727, affirming 27 B.T.A. 480; A. Harris & Co. v. Lucas, 5 Cir., 48 F.2d 187; Commissioner of Internal Revenue v. Farmers & Ginners Cotton Oil Co., 5 Cir., 120 F.2d 772; Commissioner of Internal Revenue v. Banfield, 9 Cir., 122 F.2d 1017; Stewart Silk Corp. v. Commissioner of Internal Revenue, 1947, 9 T.C. 174; Ben Crote, 41 B.T.A. 247; Kenneth S. Battelle, 47 B.T.A. 117; Estate of Makransky, 5 T.C. 397; Trenton Cotton Oil Co. v. Commissioner of Internal Revenue, 6 Cir., 147 F.2d 33; Lawyers Title Company of Missouri v. Commissioner of Internal Revenue, 1950, 14 T.C. 1221; Foundation Co. v. Commissioner of Internal Revenue, 1950, 14 T.C. 1333; Gilbert v. Commissioner, 1 Cir., 56 F.2d 361; Canton Cotton Mills v. United States, 94 F.Supp. 561, 119 Ct.Cl. 24.

**6.**

The holding period of Robert H. Hogg, Jr. with respect to the 600 shares of American Distilling Company stock which he purchased prior to November 8, 1943, and contributed in kind to the partnership on February 21, 1944, dates from the date of his acquisition of said stock to the date when the partnership ultimately disposed of said stock between December 6, 1944 and December 12, 1944, and the entire gain realized by him on this transaction in the amount of $26,263.57 was a long term capital gain. Title 26 U.S.C.A. §§ 111, 112, 113 (a)(13), 117(a)(4) and (h)(2) of the Internal Revenue Code. Rabkin and Johnson, Federal Income Gift and Estate Taxation, property contributed by partners, Sec. 14.-03(4). See also Treasury Regulations, 111 Sec. 29.113,(a)(13)-1 (CCH 522), Sec. 790.

**7.**

The Defendant illegally and erroneously collected from each of the Plaintiffs the deficiencies set forth in the pleadings insofar as they were not computed in accordance with these Findings of Fact and Conclusions of Law, and the Commissioner of Internal Revenue, therefore, erred in failing to allow Plaintiffs' claims for refund.

**8.**

Plaintiffs are entitled to judgments in accordance with these Findings of Fact and Conclusions of Law, and in accordance with the verdict of the jury establishing the validity of the partnership for income tax purposes and all other purposes during and throughout the period covered by each suit.

**9.**

The rights of the United States of America under its six intervening petitions are controlled adversely to the intervenors by these findings of fact and conclusions of law, and the prayers of said intervening petitions are denied.

**10.**

On the basis of the foregoing Findings of Fact and Conclusions of Law, let the parties to this suit within a period of 60 days from the date hereof recompute and agree upon the correct amounts of income taxes and interest thereupon, which should be refunded to each of the plaintiffs in each of said Civil Actions.

The Court retains jurisdiction of these Actions, and in the event the parties should be unable to agree upon the correct amounts of income taxes and interest thereon which should be refunded to each of the plaintiffs, the Court upon the application of any party will take such further proceed-

ings as may be necessary to determine these amounts.

Judgment will be entered in accordance with the foregoing Findings of Fact and Conclusions of Law.

11.

■ The Defendant is entitled to a certificate of Probable Cause.