THE BAGLEY AND SEWALL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38146. Promulgated September 14, 1953.

*Howard F. Farrington, C. P. A.*, for the petitioner.
*Francis J. Butler, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:* Respondent contends that the United States Government bonds acquired by petitioner for the purpose of being held in escrow to guarantee performance of its contract with the Government of Finland constituted capital assets under the definition of section 117 (a), Internal Revenue Code,[1] and that consequently the loss sustained upon their disposition must be treated as a capital loss to be allowed only to the extent of offsetting capital gains, of which petitioner had none, and the deduction taken is subject to elimination. He argues that no matter what petitioner's purpose was in acquiring the bonds, their sale could not be considered as one of assets held for sale in the ordinary course of its business.

It is petitioner's contention that though it is admitted that it is not in the business of buying and selling securities, the bonds in question were not bought as an investment but merely as an incident required and necessary in the performance of a contract carried out in the regular course of its business, and to be sold as soon as their use in performance of the contract was at an end. On this basis it contends that the bonds when released from escrow were, from that time until their sale a few days later, being held not as investments but for sale as an ordinary incident in the carrying on of its regular business, and, as such, not coming within the definition of capital assets.

---

[1] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

(B) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1), or real property used in his trade or business;

\* \* \* \* \* \* \*

(D) an obligation of the United States or any of its possessions, or of a State or Territory, or any political subdivision thereof, or of the District of Columbia, issued on or after March 1, 1941, on a discount basis and payable without interest at a fixed maturity date not exceeding one year from the date of issue.

Both parties to the proceeding cite various cases as supporting their theories. Most of these are upon facts which differ materially from those here involved. The question seems to be narrowed down finally as to whether the situation here existing is similar to and controlled by *Exposition Souvenir Corporation* v. *Commissioner*, 163 F. 2d 283, which affirmed a Memorandum Opinion of this Court, or by the decisions of this Court in *Western Wine & Liquor Co.*, 18 T. C. 1090, and *Charles A. Clark*, 19 T. C. 48.

Respondent argues that the reasoning underlying the decision in *Exposition Souvenir Corporation, supra*, as detailed by the court in its opinion, covers perfectly the situation we have here and requires a holding that the sale of the bonds here in question resulted in a capital loss. In that case the taxpayer, engaged in the business of selling souvenirs, desired a concession for such sale at the New York World's Fair which was being held by New York World's Fair 1939 Incorporated, a nonprofit corporation organized under the laws of New York and which was financed by the sale of debentures payable out of gate receipts. The Fair corporation required as a condition precedent to an application for the acquiring of a concession to do business on the fairgrounds that the applicant first acquire debenture bonds issued by it, the acquiring of a contract for a concession depending largely upon the amount of bonds subscribed for by the applicant. Under these conditions the taxpayer purchased a substantial amount in debentures of the Fair corporation, which it sold at a loss after the closing of the New York World's Fair. On these facts we held, and were sustained by the circuit court, that petitioner had made an investment in the debentures of the Fair corporation and that these represented capital assets and the loss upon their sale a capital loss.

The cases of *Western Wine & Liquor Co., supra*, and *Charles A. Clark, supra*, arose under facts identical to each other. In each of these cases the taxpayer was in the business of buying and selling liquor. A large distilling corporation with a heavy inventory of whiskey announced that it would sell this at book cost to holders of its outstanding stock, the right to purchase being limited by the number of shares held. In each of these cases the taxpayer was not a shareholder in the distilling corporation and had no desire or purpose to make an investment in its stock, but each purchased a block of stock in that corporation solely for the purpose of obtaining the agreed allotment of liquor, exercised its right and, immediately upon receiving the liquor, sold at a loss the stock acquired. In these cases we held that there was no intent on the part of the taxpayer to make an investment in the stock of the distilling corporation and that the pur-

chase and sale of such stock was merely an incident in its procurement of whiskey for resale, which was its business regularly carried on. On this basis, it was our conclusion that the loss realized upon the sale of stock represented merely an item to be reflected in the cost of goods sold, and that the stock must be considered as held by the taxpayer for sale in the regular course of its business of buying and selling liquor.

It is argued by petitioner that the facts in the two last-cited cases are identical in principle with those before us in the present case. Upon careful consideration of the facts in connection with those existing in the three cited cases, we conclude that petitioner's contention must be sustained.

In *Exposition Souvenir Corporation, supra*, the New York World's Fair was being financed by the sale of debenture bonds of that corporation payable out of gate receipts. It was vitally interested in selling its debentures, and thus laid down the condition that applicants for concessions must be investors in those securities. By this condition two objectives were obtained, the primary one being the securing of the finances necessary for operation, and secondly, securing the active participation of its concessionaires in the successful operation of the Fair. Such interest would be assured in the case of an investor in the debentures, as successful operation would be necessary to safeguard his investment. In that case it is true that the primary motive of the taxpayer in making his investment in the debentures was to secure a license for a concession, but the making of an investment was required of him, and the debentures necessarily were held as investments and sold as such. That case seems to fall clearly within the classifications represented by *Logan & Kanawha Coal Co.*, 5 T. C. 1298, where the taxpayer, in the business of buying and selling coal, made investments in the stock of various coal mining companies for the purpose of securing a voice and influence in their management, aiding it in the carrying on of its regular business by making it possible to procure coal of the grades and sizes it needed for sale to customers. Certain of these investments proved unprofitable and the stock represented by them was sold at a loss. There it was held that irrespective of the basic reason for the taxpayer's action in making these investments, they were nonetheless investments in stock which represented capital assets at the time purchased and sold.

The facts in the present case, we think, are clearly closer in principle to those involved in *Western Wine & Liquor Co., supra*, and *Charles A. Clark, supra*. In the present case it is clear that no invest-

ment in United States bonds was intended by the petitioner. These bonds were acquired solely to carry out a condition imposed by the contract under which it was manufacturing and selling a large order of equipment in the regular course of its business. The Government of Finland was in no way interested in petitioner's making an investment in United States bonds. There was no requirement under the contract that petitioner make such an investment. The Government of Finland merely wished this form of security, and it would have satisfied the demand of the contract completely for petitioner, instead of acquiring the bonds for deposit in escrow, to have borrowed the bonds themselves from the Bank of the Manhattan Company under an agreement permitting it to deposit them as security and to have paid the bank a fee for such loan. The facts in connection with the acquisition of the bonds, like those in the two last-cited cases covering the acquisition of the distilling company stock, is, we think, shown clearly to have been with no intention of making an investment. It is not thought that any business concern in the exercise of the most ordinary prudence and judgment would borrow funds from a bank and pay interest thereon to buy Government 2½ per cent bonds at a premium where the interest return would be less than that paid for the loan and the probability of any increase in market value of the bonds would be negligible. Also, as in the two cited cases, we have an immediate sale of the bonds when they had served their purpose as a security deposit and been released from escrow. The time elapsed in each instance between the release of the bonds from escrow and their sale shows definitely that the order of sale must have been coincident with the release.

Under these circumstances we think that the purchase and sale of these bonds was merely an incident in the carrying on by petitioner of its regular business of manufacturing and selling papermaking machinery. The cost to it of making the required deposit was the interest paid the bank on funds borrowed for the purchase, together with the loss sustained in effecting the deposit, this being that which was realized upon the immediate sale of the bonds. There being no intent on the part of the petitioner to hold the bonds after they had served their business purpose requires the holding similar to that made by us in *Western Wine & Liquor Co.*, *supra*, and *Charles A. Clark*, *supra*, that the sale of the bonds was of assets held for sale in the ordinary course of petitioner's business and that the loss incurred constituted an ordinary and reasonable expense.

*Decision will be entered under Rule 50.*