GULFTEX DRUG CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58378.   Filed October 25, 1957.

*E. Chas. Eichenbaum, Esq., Leonard L. Scott, Esq.,* and *W. S. Miller, Jr., Esq.,* for the petitioner.

*Graham R. E. Koch, Esq.,* for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined a deficiency of $11,847.40 in the petitioner's income tax for 1952. The issue for decision is whether the loss in 1952 on the sale of 300 shares of American Distilling Company stock was a long-term capital loss, as determined by the Commissioner, or should have been subtracted in full as a part of the cost of goods sold or deducted as a business expense. The facts have been presented by a stipulation, which is adopted as the findings of fact.

The petitioner filed its corporate income tax return with the director of internal revenue at Austin, Texas. It was engaged in the sale of liquor at wholesale in Houston, Texas. Whiskey was in short supply and difficult to obtain during the years 1943 through 1945 but was plentiful thereafter.

The board of directors of American Distilling Company passed a resolution on November 12, 1943, extending to all its common stockholders, as of a record date to be fixed later but not shown by the stipulation, the privilege of purchasing whiskey from the company at book cost or value as of November 30, 1943. That resolution was publicly announced on November 15, 1943, and the price of the stock on the New York Stock Exchange went up sharply. The directors passed another resolution on December 9, 1943, approving

a plan for carrying out the sale of liquor to stockholders. The plan, publicly announced on the night of December 14, 1943, was that for each share of common stock 16 cases of Rocking Chair whiskey could be purchased for $242.70, and 2 cases of Good Old Guckenheimer whiskey could be purchased for $46.50.

The petitioner made the following purchases of American Distilling Company common stock "[f]or the purpose of taking advantage of the whisky purchasing privileges attached to stock ownership":

|  | *December 1943* | *Cost* |
|---|---|---|
| 100 shares | | $11, 985. 00 |
| 100 shares | | 11, 885. 20 |
|  | *February 1944* | |
| 100 shares | | 11, 110. 20 |
|  | | |
| Total cost | | 34, 980. 40 |

The decision to buy that stock was made only when assurance was given that the whiskey rights would be available.

The petitioner purchased whiskey from the American Distilling Company under the privileges afforded it as holder of the 300 shares of stock. That whiskey was taken into the inventory of the petitioner at cost, was sold by the petitioner in the ordinary course of its business, and the net profit was reported as taxable income for the year 1944.

Paragraphs 11, 12, and 13 of the stipulation are as follows:

11. Common stock of the American Distilling Company sold for the following prices on the New York Stock Exchange on the dates indicated:

| Date | High | Low | Close |
|---|---|---|---|
| Dec. 31, 1942 | $15\frac{3}{4}$ | $15\frac{1}{8}$ | $15\frac{1}{8}$ |
| Oct. 10, 1943 | $34\frac{1}{4}$ | 33 | $34\frac{1}{4}$ |
| Nov. 9, 1943 | $76\frac{3}{4}$ | $70\frac{1}{2}$ | 76 |
| Nov. 15 1943 | $111\frac{1}{2}$ | $95\frac{1}{2}$ | $97\frac{1}{2}$ |
| Dec. 7, 1943 | 114 | 109 | 114 |
| Dec. 15, 1943 | 115 | $108\frac{1}{2}$ | 109 |
| Feb. 5, 1944 | 108 | $106\frac{1}{2}$ | $107\frac{3}{4}$ |

12. Common stock of the American Distilling Company had price ranges as follows in the years indicated:

| Year | Low | High | Year | Low | High |
|---|---|---|---|---|---|
| 1942 | $7\frac{1}{2}$ | $16\frac{1}{4}$ | 1947 | $25\frac{1}{2}$ | 46 |
| 1943 | $15\frac{5}{8}$ | 128 | 1948 | 25 | $49\frac{3}{4}$ |
| 1944 | $101\frac{1}{2}$ [1] | $116\frac{3}{4}$ [1] | 1949 | $25\frac{1}{4}$ | $36\frac{1}{8}$ |
|  | $21\frac{1}{4}$ [2] | $53\frac{1}{2}$ [2] | 1950 | $32\frac{3}{4}$ | $49\frac{3}{4}$ |
| 1945 | $30\frac{1}{4}$ | 57 | 1951 | $42\frac{7}{8}$ | $58\frac{3}{4}$ |
| 1946 | $41\frac{1}{2}$ | 75 | 1952 | $33\frac{7}{8}$ | $54\frac{1}{2}$ |

[1] With whiskey rights.
[2] Without whiskey rights.

13. Net earnings per share on common stock of the American Distilling Company were as follows for the years indicated:

| Year | Earnings | Year | Earnings |
|------|---------:|------|---------:|
| 1944 | $3.03 | 1949 | $3.45 |
| 1945 | 3.48 | 1950 | 4.71 |
| 1946 | 11.70 | 1951 | 5.22 |
| 1947 | 4.04 | 1952 | 2.81 |
| 1948 | 4.12 | 1953 | 1.83 |

The petitioner carried the American Distilling Company stock on its books as a capital asset and in December 1947 set up a reserve in the amount of $25,980.40 "for fluctuation on the stock." The reserve was adjusted each year to the market value of the stock. Cash dividends of $2 per share were paid on the stock from 1946 through 1952.

The petitioner sold the 300 shares of stock in 1952 for $11,047.92 (at approximately $36.82 per share) and thereby sustained a loss of $23,832.48.

The petitioner, on its return for 1952, included in "[o]ther deductions authorized by law" $23,832.48, as "[l]oss on Sale of Distilling Company stock acquired for whiskey purchase privilege."

The Commissioner, in determining the deficiency, disallowed $23,782.48 as a loss deduction and gave the following explanation:

It has been determined that the loss of $23,832.48, sustained by you during the year 1952 upon the sale of 300 shares of American Distilling Company stock constitutes a long-term capital loss, the deduction for which is governed by the provisions of Section 23 (g) (1) and 117 (d) (1) of the Internal Revenue Code of 1939. Accordingly, the deduction of $23,832.48, claimed in your return for the year 1952, has been disallowed and the deduction for such loss has been allowed only to the extent of your gains from the sale or exchange of other capital assets.

Capital loss as above_____ $23,832.48
Allowed to extent of capital gain_____ 50.00
    Amount disallowed_____ 23,782.48

The petitioner contends that it purchased the stock only for the purpose of acquiring the whiskey for resale in its business and therefore the cost of the stock was an inventory cost or business expense and the loss on the sale of the stock in 1952 is deductible in its entirety and not as a limited long-term capital loss. It claims that the following cases fully support its contention: *Western Wine & Liquor Co.*, 18 T. C. 1090, appeal dismissed 205 F. 2d 420; *Charles A. Clark*, 19 T. C. 48; *Commissioner* v. *Bagley & Sewall Co.*, 221 F. 2d 944, affirming 20 T. C. 983; and *Hogg* v. *Allen*, 214 F. 2d 640, affirming 105 F. Supp. 12. The taxpayer in each of those cases, except *Bagley & Sewall Co.*, had acquired American Distilling Company stock solely for the purpose of obtaining whiskey for resale in its business, and each sold the stock promptly at a loss after that purpose

was accomplished. Bagley and Sewall Company had purchased bonds for deposit as a guarantee in connection with its business and sustained a loss when the need for the bonds ended. Each of those four taxpayers was allowed to deduct the full amount of the loss on the stock or the bonds instead of being required to treat it as a loss from the sale of a capital asset.

Those cases presented an unusual situation in that the security was not bought for any purpose for which a security is usually purchased. The stock was bought only for the privileges attached to it of purchasing whiskey for resale in the business of the taxpayer, and then the stock was promptly sold at a loss. The stock was never held for any purpose other than the whiskey purchase privileges. The situation in the *Bagley & Sewall* case was similar.

The stipulated facts in the present case disclose a situation which is different in one important respect. The present petitioner did not sell the stock promptly after availing itself of the whiskey-purchasing privileges but, instead, held the stock for some purpose for a total period of about 9 years. The short holding period in the four cited cases was consistent with the contention that at the time of the purchase and continuing to the time of sale the sole purpose was to acquire whiskey. However, the purpose for which stock is owned and held can change, and the purpose at the time of sale is determinative of the effect of the sale for tax purposes. *Carl Marks & Co.*, 12 T. C. 1196, 1202; *C. E. Mauldin*, 16 T. C. 698, 707, affd. 195 F. 2d 714; *Philber Equipment Corporation*, 25 T. C. 88, 92, reversed on other grounds 237 F. 2d 129; *Arthur E. Wood*, 25 T. C. 468, 474.

The stock here in question was listed on the New York Stock Exchange and was readily salable at all times. It ranged from a low of $21\frac{1}{4}$ in 1944 to a high of 75 in 1946. The stipulation shows the price range in each year after the whiskey-purchasing rights no longer attached. Dividends of $2 a share were paid on the stock for the years 1946 through 1952. Earnings were higher. The petitioner did not sell the stock promptly after benefiting from the whiskey-purchasing privileges but chose to retain the stock as an investment until sometime in 1952, when it sold at approximately $36.82 per share. The petitioner certainly was not holding the stock during that period for sale to customers in the ordinary course of any trade or business which it was carrying on, and when it held the stock beyond a reasonable time, after exercising the whiskey-purchasing privileges, it deprived itself of the benefit of the type of deduction allowed in the cases cited and relied upon by it. The stipulated facts show that the petitioner throughout most of its holding period and particularly at the time of the sale was holding the stock as a capital asset. The loss was a long-term capital loss as determined by the Commissioner.

*Decision will be entered for the respondent.*