**SWED DISTRIBUTING COMPANY,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

**No. 17721.**

United States Court of Appeals
Fifth Circuit.

Dec. 4, 1959.

**331**

Arthur Glover, Amarillo, Tex., for petitioner.

Melva M. Graney, Atty., Dept. of Justice, Charles K. Rice, Asst. Gen. Counsel, Dept. of Justice, Lee A. Jackson, A. F. Prescott, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., Arch M. Cantrall, Chief Counsel, I. R. S., John M. Morawski, Sp. Atty., I. R. S., Washington, D. C., for respondent.

Before HUTCHESON, JONES and WISDOM, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal from a decision of the Tax Court, 31 T.C. 84, involves income and excess profits taxes for the fiscal years ending July 31, 1951, 1952, and 1953. The sole matter decided below and, therefore, the sole matter primarily presented for our review is whether an agreement between the taxpayers and one Hinzpeter was acquired by a partnership consisting of taxpayer's two principal stockholders, a matter not determined by the commissioner or raised and presented by him below, but raised and decided by the Tax Court of its own motion.

The commissioner, in determining deficiencies against petitioner, did so for the stated reason:

"The deduction for sales commission paid to corporate stockholders, Messrs. Swed and Sullivan, have been disallowed, as it has not been established that these payments con- stitute applicable deductions within the purview of Sec. 23(a) of the Revenue Code of 1939 [26 U.S.C.A. § 23(a)]."

The Tax Court, on its part, however, determined that:

"Corporate petitioner's payment to its two principal stockholders, disallowed as ordinary and necessary business expenses of production *since assignment of the contract requiring the payment not shown.*" (Emphasis supplied.)

As a predicate to this conclusion, the Tax Court stated of the contract with Hinzpeter:

"We believe that this contract constituted a valid and legal obligation on the part of the petitioner at the time it was entered into. We also believe that the consideration for petitioner's obligation was the termination of its burdensome employment contract which admittedly is a normal business expense. Bagley & Sewell v. Commissioner of Internal Revenue, 20 T.C. 983, affirmed 2 Cir., 221 F.2d 944. However, it is absolutely essential to petitioner's case that an assignment of the Oct. 1, 1946, contract from Hinzpeter to Swed and Sullivan be established. Petitioner's case is based solely upon the theory of such an assignment or transfer and as to this petitioner has the burden of proof. If petitioner had produced convincing evidence of an assignment at least in form and by intendment of the actors, we would reach the further troublesome question of whether this particular contract was assignable or whether it in fact required some continuing personal service from Hinzpeter designed to assist it in retaining 'the right of distribution of Budweiser beer in all of its branches operated in the state of Florida.' In our view, *that question is not reached. The evidence relied upon by petitioner to prove assignment is not only too scanty but tends to show that the primary moving purpose of*

*Swed and Sullivan in the 1947 dealings was to rid petitioner completely of Hinzpeter and its obligations to him.*" (Emphasis supplied.)

Thereafter, notwithstanding its disclaimer of intention to decide any other question, it entered upon a rambling speculation as to whether Hinzpeter was dead and whether the conditions attached to the contract with Hinzpeter were still existing and operative.

Upon the coming down of this more or less hypothetical opinion, the taxpayer, moving at once to have the court receive additional proof and to revise its opinion, attached to its motion affidavits precisely establishing: that Hinzpeter was still living in the years of the payments in question; and that conditions as to outlets, on which the contract rested, obtained in full force.

The Tax Court ignored the motion, and the taxpayer is here urging upon us that the Tax Court erred: in holding, as it did, that the facts did not show that Swed and Sullivan, with their own money, had acquired and had succeeded to the contract of Hinzpeter; and in overruling taxpayer's motion, "to receive additional proof and, upon consideration thereof, to revise the opinion of the court."

The record leaves us in no doubt that the case was not fully and fairly tried below, and that the judgment must be reversed with directions to afford taxpayer, commissioner, and court full opportunity to try, to hear, and to determine the issues the case presents. In holding as the Tax Court judge did, and arguing as the commissioner does in support, that there was no proof that Swed and Sullivan had acquired the contract, both overlooked two unassailable facts. One is that the money paid to Hinzpeter was paid, not out of the corporate funds but out of the partnership funds of Swed and Sullivan, and the other is that the parties involved, the corporation and the partnership, recognized by their acts and conduct that Swed and Sullivan had acquired the contract, were owners of it, and the one paid, and the other received, the moneys due under the contract.

The undisputed facts are: Hinzpeter's contract was not marked "cancelled" nor in anywise terminated but was delivered to Swed; that the moneys which obtained the delivery of these contracts to Swed were not the moneys of the corporation but the moneys of Swed and Sullivan; and that Swed, who was the only witness who testified about the transfer, testified that he purchased the interest that Hinzpeter had in this contract in November of 1947, in the fiscal year ending in July, 1948, and that Swed Distributing Company made payments thereon to Swed and Sullivan under the contract.

Under this evidence, it is hornbook law that, nothing to the contrary appearing, the title to the contract, acquired by the payment of Swed and Sullivan's money, passed to those whose money had obtained its delivery, and that, absent any proof, indeed any contention, that Swed committed a fraud on the company by demanding and receiving payments on the contract thus acquired, a finding to the contrary would be mere fiating. What seems to have been completely overlooked by the Tax Court is that there was nothing illegal or unfaithful in Swed's acquiring the contract just as he said he did, if this was in accord with the wishes of the company, and that, putting aside for the moment questions of tax consequences, in resolving any question as to what the parties affected really intended to accomplish in the transaction, if there is any ambiguity about it, the interpretation given by the only parties affected would be well-nigh conclusive as to what was intended and done.

In what we have said we have not, of course, meant to state that if, on another trial, it is made to appear that the realities of the transaction were that Swed and the company intended that the contract should be cancelled; and that Swed, in using the moneys of the partnership, had merely advanced them to the company with the intention that the company would repay him; or that, whether repaid or not, the company should have the benefit of them; these facts would

make out a case for a finding that the continuance of payments under the Hinzpeter contract would be a necessary and ordinary expense of petitioner. What and all that we are deciding is that, upon this record, in view of the tendered evidence and of the contentions made by the Tax Court and the commissioner, that there might be other reasons which would make the denial of the deductions correct, we, without making any determination upon what the decision should be if and when the evidence is fully developed, reverse the judgment and remand the cause to the Tax Court for a full and complete trial in which all the applicable issues and all the facts pertaining thereto are fully developed and determined.

Reversed and Remanded for further and not inconsistent proceedings.

JONES, Circuit Judge (concurring specially).

It seems to me that if it appears that Swed and Sullivan, who owned all or substantially all of the corporation's outstanding stock, intended to procure a cancellation of the Hinzpeter contract for the benefit of the corporation and intended to contribute the amount required for that purpose to the corporation, the same result would be reached, for the purposes of this case, as if there had been an intention that the corporation should make repayment to the stockholders of the amount paid by them to Hinzpeter.

The contract was an onerous one from the standpoint of the corporation. Swed, the manager of the corporate business, asked the Vice President of Anheuser-Busch, "to do everything possible to get Mr. Hinzpeter some kind of a settlement so we can pay him off and get out for Swed Distributing Company." If the intent was "to pay him off" and "get out for" the petitioner, that intent seems hardly effected by the purchase of the contract by the stockholders. If the intent was to get Swed Distributing Company "out" of the liabilities of the burdensome contract, that intent can hardly

be accomplished by leaving the corporation fully liable to perform it. I am reluctant to have the Tax Court, on remand, hornbooked into holding that there was a sale and a purchase unless it be shown that there was fraud or that there was an intention that the corporation repay the stockholders the amount of their advance for the settlement with Hinzpeter.

HUTCHESON, Circuit Judge, concurs.