THOMAS MEADE, JR. AND HELEN MEADE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RespondentMeade v. CommissionerDocket No. 2731-71.United States Tax CourtT.C. Memo 1973-46; 1973 Tax Ct. Memo LEXIS 238; 32 T.C.M. (CCH) 200; T.C.M. (RIA) 73046; February 26, 1973, Filed Daniel W. Boyle, for the petitioners. Robert J. Murray, for the respondent. FAYMEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in the income tax liability of the petitioners for the taxable years 1967, 1968, and 1969, as follows: YearAmount1967$7,795.7219687,581.10196921,268.92The issue is whether losses incurred in the commodity futures market are capital or ordinary. 2 FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners, Thomas Meade, *239 Jr. , and Helen Meade, filed joint Federal income tax returns for the taxable years 1967, 1968, and 1969 with the director of the Internal Revenue Service Center, Kansas City, Missouri. Petitioners' legal residence on the date of the filing of the petition herein was Oxford, Iowa. Petitioner Helen Meade is a party herein only by reason of having filed a joint return with her husband, Thomas Meade, Jr., and the latter will hereinafter be referred to as petitioner. During the taxable years at issue, the petitioner owned and operated a farm of approximately 520 acres in Johnson County, Iowa. The farming operation consisted of raising corn and fattening cattle primarily to be sold as slaughter cattle (hereinafter referred to as fat cattle). The general practice was to acquire feeder cattle at a weight of from 500 to 700 pounds and feed them until they weighed between 1,100 and 1,200 pounds. The time required to fatten the average feeder animal is approximately 140 days. The feeder cattle are fattened on high-energy feed composed primarily of corn. An average of 70 bushels of corn are needed to fatten the feeder cattle to the desired salable weight. The petitioner raised approximately*240 21,660 bushels of corn on his farm during the years at issue, 3 most of which was fed to the feeder cattle. In addition, the petitioner purchased the following amounts of corn for his farming operation and stockyard operation: YearFarmStockyardBushelsBushels196715,4304,34319681,05911,357196928,9053,248The petitioner did not have a long-term contract for the purchase of the extra feed he needed. He purchased the excess on a day-to-day basis as needed. North Liberty Stockyards, Inc. (North Liberty), is an Iowa corporation which elected under section 1372 not to be subject to the taxes imposed by chapter 1 of the Code for the taxable years 1967, 1968, and 1969. The petitioner is the sole stockholder of North Liberty. North Liberty did not operate like the petitioner's separate farming operation. North Liberty was a stockyard and generally operated on the principle of buying and selling cattle at a very fast turnover rate. Cattle served as inventory for the petitioner's North Liberty operation and as a general rule cattle remained at the stockyard only for a period of ten days. North Liberty bought and sold cattle during the*241 years at issue as follows: 4 YearSale in No. ofPurchase in No.Heads 1of Heads 119678,6099,802196812,72814,11419695,0244,468During the taxable years at issue, the petitioner obtained from North Liberty feeder cattle which he fattened in his farming operation. The number of cattle purchased from North Liberty are as follows: YearNo. ofAnimals196778119681,5411969612For the years in issue, the petitioner sold fattened animals from his farming operation as follows: YearNo. ofAnimals19671,136196866219691,381During the taxable years 1967, 1968, and 1969, the petitioner purchased and sold contracts for corn and cattle futures in the commodity exchanges in his own name as follows: 5 1967 Date OpenedNumber ofContractContractPositionContractsMonthPrice8-26-663February$27.75Long8-01-675February27.30Long8-26-671February27.75Long8-01-662February27.75Long9-22-673February26.15Short7-26-671December27.42Long8-31-674December27.6 0Long9-01-671December27.60Long9-11-674December27.30Long9-20-67 2December26.52Long10-12-672December26.35Long10-12-672December26.37Long10-12-671December26.32LongTOTALS31*242 1967 Date OpenedDate ClosedClosing PriceGain or Loss8-26-662-03-67$25.15($ 1,372.00)8-01-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.908-26-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.15( 4,531.00)8-01-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.15( 686.00)9-22-6710-03-6725.9293.757-26-678-31-679-01-679-11-679-20-67 10-12-6710-12-6710-12-6712-19-6725.85( 5,425.00)TOTALS($11,920.25)Gain and loss figures have been adjusted to reflect commissions and fees. One contract for live cattle equals 40,000 pounds or approximately 36 head of cattle. 6 Corn - 1967Date OpenedQuantityContractContractPosition(Thous. Bu.)MonthPrice9-08-6610March$1.52 1/2Long12-23-6610July1.46 1/2Short2-15-6710July1.41Short4-11-6710July1.43 1/2Long4-17-6710July1.37 5/8Short4-17-6710July1.37 5/8Short5-11-6710July1.35 1/4Short5-11-6710July1.35 1/2Short5-18-6710July1.32Short5-18-6710July1.32 1/2Short4-12-6710September1.44 1/4Long4-12-6710September1.44 1/4Long7-12-6710December1.25Short8-07-6710March 681.23 3/4Short8-08-675March 681.24Short7-26-6720March$1.27 3/8Short12-06-6710March1.19 1/4Short9-26-6710July1.24 1/2Short12-06-6710July 681.25 3/8ShortTOTALS195*243 Corn - 1967Date OpenedDate ClosedClosing PriceGain or Loss9-08-662-16-67$1.36($ 1,694.00)12-23-662-15-674-12-671.42 1/2162.004-11-674-19-671.38 1/2 1( 544.00)4-17-674-28-671.32518.504-17-675-10-671.34 1/8306.005-11-675-11-675-17-671.32 5/8 1462.005-18-676-01-671.35(344.00)5-18-677-19-671.27 7/8(5)7-19-671.28 (5)412.254-12-679-15-671.18( 2,669.00)4-12-679-19-671.17 3/4( 2,964.00)7-12-6712-18-671.14 7/8968.508-07-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-21-671.19659.00 77-26-6712-06-6712-26-67$1.18 7/8$ 1,605.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-29-671.25 3/4( 169.00)12-06-6712-29-671.25 3/4( 81.50)TOTALS($ 3,101.75)Live Cattle - 1968Date OpenedNumber ofContractContractPositionContractsMonthPrice10-03-674February$25.92Long1-15-685February25.77Long1-30-683February26.35Long1-30-682February26.32Long1-26-685April25.62Long1-30-682April25.70Long2-16-6810June25.80Long4-15-682June26.85Long4-29-683June26.70LongTOTALS36Date OpenedQuantityContractContractPosition(Thous. Bu.)MonthPrice12-21-6715March$1.19Long*244 Live Cattle - 1968Date OpenedDate ClosedClosing PriceGain or Loss10-03-671-15-681-30-681-30-682-02-68$26.42 1$ 1,068.751-26-681-30-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.12 1662.502-16-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.471,437.504-15-684-29-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.75( 137.50)TOTALS$ 3,031.25Corn - 1968Date OpenedDate ClosedClosing PriceGain or Loss12-21-671-15-68$1.19 5/8$ 27.75Gain and loss figures have been adjusted to reflect commissions and fees. One contract for live cattle equals 25,000 pounds or approximately 22 head of cattle. 9 Date OpenedQuantityContractContractPosition(Thous. Bu.)MonthPrice1-15-6820March$1.19 7/8Short1-16-6820March1.19 3/4Short1-19-6850March1.18 3/4Short1-25-6830March1.20 3/8Short2-02-6820May1.23 1/2Short2-01-6820May1.23 1/8Short2-02-6820May1.23 1/2Short3-18-6820July1.25 1/2Long3-25-6830July1.25 1/4Long3-19-6820May1.21 1/2Long3-26-6830May1.21 1/8Long3-07-6850July1.25 1/4Long3-18-6850July1.25 1/2Long4-04-6830July1.22 1/4Long3-26-6850July1.24 1/2Long4-30-6850July1.17 1/8Long6-12-6810September1.17 1/2Short6-04-6825September1.17 1/2Short6-12-6835September$1.17 1/2Short6-04-6825September1.17 1/2Short6-12-685September1.17 1/2Short6-26-6820September1.13 1/2Short6-27-6820September1.13 7/8Short7-12-6830September1.12 1/2Short6-26-6820September1.13 5/8Short6-27-6820September1.13 7/8Short8-13-6850September1.05Short8-14-6850September1.05 3/8Short8-21-6820December1.05 3/8Short10-03-6850December1.02Short10-16-6825July1.17 7/8Short10-09-6825December1.03 5/8Short10-09-6825December1.03 3/4Short10-17-6850December1.07 1/2Long10-17-6880December1.07 1/4Long10-23-6810December1.08 1/2Short10-23-6840December$1.08 1/2Short7-25-6810March1.12 1/2Short8-19-6810March1.09 7/8Short9-27-6825March1.07 1/8Short10-01-6850March1.06 3/8Short11-01-685March1.15 1/4Short11-01-6815March1.15 1/4Short11-20-68100December1.16 1/4LongTOTALS1,375*245 Date OpenedDate ClosedClosing PriceGain or Loss1-15-681-16-681-19-682-21-68$1.18 1/4$ 479.001-25-682-26-681.17 1/42-02-682-26-681.21 5/81,092.502-01-682-02-683-15-681.22 1/8299.003-18-683-25-684-11-681.19 5/8( 2,862.50)3-19-683-26-684-11-681.16 1/8( 2,795.00)3-07-683-18-684-16-681.18 1/84-04-684-16-681.18 1/4( 9,022.00)3-26-684-16-681.18 1/4( 3,345.00)4-30-686-12-681.15 1/4( 1,157.50)6-12-687-01-681.13 1/8393.506-04-687-02-681.12 5/8(5)7-02-681.13 1/8(20)1,008.75 106-12-687-02-68$1.12 5/8$ 1,552.256-04-687-03-681.12 5/81,108.756-12-686-26-686-27-687-11-681.11 1/41,089.507-12-687-22-681.10 3/8 1505.506-26-686-27-687-25-681.09 5/81,474.008-13-689-03-681.04 1/230.008-14-689-03-681.04 1/2217.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-03-6810-17-681.07 1/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-17-681.18 1/2 1( 3,749.25)10-09-6810-09-6810-17-681.07 1/2 1(2,126.25)10-17-6810-23-681.08 7/8 1467.5010-17-6810-23-681.08 1/2(30) 110-23-681.09 (50)1 898.0010-23-6811-18-681.17 5/8( 956.50)1110-23-6811-19-68$1.18( 3,976.00)7-25-688-19-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-01-6811-01-6812-18-681.17 5/8( 2,315.00)11-01-6812-19-681.17 3/4( 984.75)11-20-6812-19-681.14 3/8( 9,552.50)TOTALS($32,198.75)*246 12 Live Cattle -1969Date OpenedNumber ofContract MonthContract PricePositionContracts3-21-6910August$30.40Short3-25-695June31.45Long3-25-693June31.10Long3-25-695June31.07 1/2Long3-26-695June30.52 1/2Long3-26-695June30.60Long3-27-695June29.25Long4-16-691June29.82 1/2Long4-16-691June29.85Long4-08-6910August29.75Long4-28-6910August30.57 1/2Long4-16-693June29.85Long4-17-695June29.90Long5-06-695August30.87 1/2Short5-06-695October29.95ShortGain and lossOne contractfigures havefor live cattlebeen adjustedequals 25,000to reflectpounds orcommissions andapproximatelyfees.22 head ofcattle. 135-06-695October$29.95Short5-08-695October30.07 1/2Short5-08-691August30.75Long5-09-6910August30.70Long5-21-6910August31.05Long5-16-691August31.90Long5-23-6910August31.50Short5-28-6910August32.37 1/2Short5-28-6910October31.00Long6-04-6910August31.90Short6-04-691August31.90Short6-06-6910August32.30Long6-06-695August32.32 1/2Long6-09-6910August32.37 1/2Long6-12-6910August32.05Long6-16-6915August31.52 1/2Long6-25-6910October$29.15Short6-25-6910October29.15Short7-07-6910October29.80Long7-08-6910October29.62 1/2Long6-26-691August31.40Short7-09-6910October29.27 1/2Long7-09-6910December28.90Long6-25-6910December28.97 1/2Short6-30-6910October30.20Short7-03-6910October29.92 1/2Short5-28-691August32.25Long6-02-6910August32.65Long6-03-695August32.27 1/2Long6-03-695August32.25Long6-25-692October29.15Short6-25-698October29.15Short6-26-692October29.65Short6-26-698October$29.65Short8-12-6910October28.47 1/2Short8-08-692August30.12 1/2Short8-12-692August30.67 1/2Short8-12-691August30.82 1/2Short8-15-6910October28.02 1/2Long6-11-6910August32.55$8Long-19-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August32.20Long7-01-6910August31.80Long8-18-695October28.10Long8-18-695October28.12 1/2Long8-18-695October28.07 1/2Long8-19-6920October27.90Long8-18-695October28.15Long8-18-695October28.12 1/2Long8-26-6910December27.87 1/2Long8-26-6910February27.52 1/2Long8-20-691October28.25Short9-19-6915December$28.35Long9-19-6910December28.37 1/2Long9-24-692February28.62 1/2Long9-24-6918February28.62 1/2Long10-2-6910February28.95Short10-02-6910February28.97 1/2Short8-26-6910April27.45Long10-02-691February 7029.25Short8-26-6910October28.75Long8-26-695October28.52 1/2Long10-02-695February 7029.30Short9-03-699December27.97 1/2Short9-03-691December28.00Short9-08-6910December27.80Short9-08-695December27.82 1/2Short9-08-695December27.82 1/2Short9-09-695December27.80 1/2Short11-17-6910December$28.77 1/2Long11-17-691December28.80Long11-17-6910December28.72 1/2Long9-09-695December27.80Short9-09-695December27.85Short9-09-6910December27.90Short10-20-695December28.22 1/2ShortTOTALS631*247 Live Cattle -1969Date OpenedDate ClosedClosing PriceGain or Loss3-21-693-26-69$30.60 1($ 1,160.00)3-25-693-25-693-25-693-26-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.60 (7)3-26-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.80 (7)3-27-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.70 (14)( 7,250.004-16-694-16-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.07 1/2(2)568.754-08-694-28-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.75 13,980.004-16-694-17-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.27 1/2(8)2,587.505-06-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.77 1/2 120.005-06-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.95 1( 180.00)Gain and lossfigures havebeen adjustedto reflectcommissions andfees.5-06-695-08-695-12-69$29.95(10) 1($ 110.00)5-08-695-09-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.00(11) 15,304.005-21-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.22 1/2 1340.005-16-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.25 1( 296.00)5-23-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.25 1( 3,360.00)5-28-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.25 1280.005-28-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.70 1( 1,560.00)6-04-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.75 1380.006-04-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.75 138.006-06-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.47 1/2 1480.006-06-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.47 1/2 1190.006-09-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.47 1/2 1180.006-12-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.15 140.006-16-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.67 1/2570.00 146-25-697-01-69$30.22 1/2 1($ 4,660.00)6-25-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.65 1( 2,360.00)7-07-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.92 1/2 1280.007-08-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.85 1680.006-26-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.80204.007-09-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.37 1/2 1180.007-09-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.97 1/2 180.006-25-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.85140.006-30-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.207-03-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.07 1/26,680.005-28-696-02-696-03-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.57 1/2(10)6-03-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.55 (11)( 24,986.00)6-25-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.25( 152.00)6-25-696-26-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.303,440.00 156-26-698-13-69$28.42 1/28-12-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.50 1$ 3,172.008-08-698-12-698-12-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.67 1/2 1( 560.00)8-15-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.20 1480.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.306-20-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.47 1/27-01-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.45( 22,380.00)8-18-698-18-698-18-698-19-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.15 (35) 11,040.008-18-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.15 1( 180.00)8-18-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.22 1/2 120.008-26-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.00 1140.008-26-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.85940.008-20-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.9584.00 169-19-699-19-699-19-69$28.32 1/2(24)($900.00)19-24-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.82 1/2 188.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-01-6928.95 11,692.0010-2-6910-02-6910-15-6929.32 1/2( 3,620.00)8-26-6910-15-6929.708,640.0010-02-6910-16-6929.154.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-17-6928.72 1/2( 460.00)8-26-6910-17-6928.75270.0010-02-6910-17-6929.05320.009-03-699-03-699-08-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-06-6928.55 (25)( 7,640.00)9-08-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-07-6928.57 1/2(10)(3,410.00)1711-17-6911-17-6911-17-6911-17-69$28.85 (21) 1($ 1,282.00)9-09-699-09-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-24-6929.50( 13,820.00)10-20-6912-05-6929.75( 3,230.00)TOTALS($60,023.75)*248 Corn - 1969Date OpenedQuantityContractContractPosition(Thous. Bu.)MonthPrice5-05-6910December$1.23 3/4Short5-20-6910December1.25 3/4ShortTOTALS20Corn - 1969Date OpenedDate ClosedClosing PriceGain or Loss5-05-695-27-69$1.24($ 69.00)5-20-695-27-691.24 1131.00TOTALS$ 62.00 18 ULTIMATE FINDING OF FACT Petitioner has not shown that any of his trading in corn and cattle futures was other than speculative in nature. OPINION Respondent, relying on section 1233, Internal Revenue Code of 1954, 1 contends that all of the petitioner's losses arising from transactions in the commodity futures market are capital in nature. *249 The petitioner contends that his losses are ordinary losses and not losses resulting from the sale of capital assets. His claim is that either the transactions are true hedges which would remove the commodity futures contracts from the category of capital assets, United States v. Rogers, 286 F.2d 277 (C.A. 6, 1961); and L. M. Muldrow, 38 T.C. 907 (1962), or the transactions were an integral part of his regular business and the losses must be recognized as ordinary under the decision in Corn Products Co. v. Commissioner, 350 U.S. 46 (1955). The petitioner further contends that in determining whether his personal commodity market transactions were part of his business operation we must refer to his business operation as a combined operation of 19 both his personal farm and his wholly-owned subchapter S stockyard operation. Without passing on petitioner's novel argument that we should characterize an individual's deductions by considering the effect of the individual's holdings in separate corporations, we must hold for the respondent. Assuming, arguendo, that we considered his farm and North Liberty as one operation and accepted petitioner's*250 line of reasoning, we still could not find that any of the commodity transactions were anything other than speculative, capital transactions. While we suspect that hidden somewhere in the petitioner's myriad transactions there are a number of business related transactions which would give rise to ordinary income treatment, we are unable to ferret out just which transactions are speculative in nature and which are hedges or integrally related to petitioner's business. The petitioner's own testimony revealed that he did not understand the nature of a hedging transaction and that often when he believed he was hedging he was actually speculating. Coupled with this, he introduced stipulated exhibits revealing over 178 separate commodity transactions and over 500 separate actual purchases and sales of corn and cattle by his two business operations. With minor exceptions, the relationships between the petitioner's business operations and his commodity market transactions were never 20 shown. It is petitioner's burden of proof, Rule 32, Tax Court's Rules of Practice, and without testimony or other evidence which would point out the true nature of the commodity transactions we are*251 constrained to hold for the respondent. See Sicanoff Vegetable Oil Corporation, 27 T.C. 1056, 1068-1069 (1957), reversed on other grounds 251 F.2d 764 (C.A. 7, 1958). The proper trial of a case before the [Tax Court] requires thorough preparation, a clear understanding of the issues, and the marshaling of the evidence in such a way as to indicate clearly the effect of the same and the issue to which it appertains. This is not accomplished by dumping into the hands of the [Tax Court] a number of books of account and other similar evidence. Such evidence is not self-illuminating. The [Tax Court] should not be asked to ferret out the correct answer to technical or difficult questions of law and fact from unexplained, uncoordinated evidence. * * * [Evergreen Cemetery Association, 25 B.T.A. 544, 551-552 (1932)] [Emphasis added] The question of whether or not a given course of action constitutes hedging has been considered in many cases involving almost every conceivable factual situation. *252 Without exception, the question has been viewed as a factual one which must be answered in each case upon the peculiar facts presented. See Kenneth S. Battelle, 47 B.T.A. 117 (1942); and Wool Distributing Corporation, 34 T.C. 323 (1960). Whether the doctrine of the Corn Products case is applicable is also a question which must be answered in light of the facts and circumstances of each individual case. See Commissioner v. Bagley & Sewall Co., 221 F.2d 944, 946 (C.A. 2, 1955), affirming 20 T.C. 983 (1953); and Herbert Enoch, 57 T.C. 78121 (1972). The term "hedging" has for years defied concise and exact definition. Kenneth S. Battelle, supra, at 125. Essentially, it "is a form of price insurance * * * resorted to by business men to avoid the risk of changes in the market price of a commodity. The basic principle of hedging is the maintenance of an even or balanced market position." 2Commissioner v. Farmers & G. C. Oil Co., 120 F.2d 772 (C.A. 5, 1941), reversing 41 B.T.A. 1083 (1940),*253 certiorari denied 314 U.S. 683 (1941). Generally, where a hedge is made, a position is taken in the futures market to offset a risk with respect to actuals.In the present case, hedging would work in the following manner: Assume a party purchases, for a fixed price, feeder cattle which he expects to hold and feed for 120-140 days and then sell as fat cattle, or assume that his stockyards purchase cattle which will be held for a shorter period of time and sold. Until the party eventually sells the actual cattle, he is in the position of being drastically affected by a drop in cattle prices. In order to "lock" in his normal profit, he would sell contracts or go "short" for cattle in the commodity 22 market. Since the prices on the futures market generally follow*254 the trend of prices for the actual commodity, the party would be "hedged" or protected from any price decrease on his actual commodity. If the price of cattle declines during the period between his purchase and sale of the actual cattle, the party will suffer a loss on the cattle he is holding. However, since the price of cattle on the futures market has also declined, he may now buy sufficient cattle contracts in the futures market and "cover" his previous short sale. Since he "covers" his short sale for less than he actually received when he sold short, he will realize a profit in his commodity market dealings. This profit will offset his loss in the actual cattle sale. In the above situation, it is clear that the commodity market transaction was not undertaken as a means of profiting through cattle price fluctuations. The party engaged in the commodity transaction was interested primarily in eliminating the possibility of loss from adverse price fluctuations while he was handling his inventory. The hedge provided the necessary protection. There is a further necessary element which a party has to consider in "locking" in his profit in the actual cattle sales. A party may*255 raise some of the corn necessary to feed his cattle and still need to purchase additional feed. Since a drastic rise in corn and feed prices could cause the party increased expenses, he could rely on the commodities market to help provide for fixed expenses in the following manner: 23 The party at the time he purchases his cattle can purchase (or go long on) contracts for corn in the commodity futures market. As the party actually purchases corn for feed at increased prices, he can sell his corn futures at a profit and this profit serves as a hedge to offset the increased feed prices. 3In another circumstance, a party, for purposes of ordinary income treatment, need not show that he undertook commodity futures contracts as a true hedge. See Corn Products Refining Co. v. Commissioner, 215 F.2d 513, 516 (C.A. 2, 1954), *256 affd. 350 U.S. 46 (1955). He must, however, show that his transactions were integrally related to his trade or business. For instance, a purchase of future contracts to insure an adequate supply of cattle in the future at a fixed price would comply with the requirements of the doctrine. As discussed above, many situations give rise to ordinary income treatment for gains or losses derived from the commodity futures market. However, in order to receive ordinary income treatment, it is essential that the petitioner not fit within the definition of a "legitimate capitalist," that is, he must be more than a party "exercising [his] judgment as to * * * 24 conditions [purchasing] or [selling] for future delivery with a view to profit based on the law of supply and demand." United States v. Coffee Exchange, 263 U.S. 611, 619 (1924). The petitioner in the case at bar in his own testimony revealed that often when he entered the commodities market he did so as a legitimate capitalist. On cross-examination, petitioner was asked how he would lock in a profit*257 by use of the commodities market when he made an actual purchase of cattle. He answered as follows: If I thought the cattle market was going to get higher, I could step in and buy a few contracts long, if the market goes up 50 cents, or so, I could pick up that to cheapen down my feeder cattle. It is quite clear that the petitioner often bought cattle simply in speculation of what he thought the market conditions warranted. It is axiomatic that the purchase of cattle contracts in the futures market, coupled with the purchase of actual cattle, is not a hedging transaction. Petitioner, by doing such, is simply putting himself at the mercy of the market and he is a legitimate capitalist in his commodity transaction. He loses in both markets if the price declines and he gains in both if the price increases. Also this is not a Corn Products type of transaction. His commodity transaction is not designed to secure a source of supply while he sells current inventory, for his concomitant action in the actual market was to purchase, not sell his stock in trade. In short, no protective business function whatsoever has been served. 25 Regarding the petitioner's corn transactions, *258 the record reveals that the petitioner purchased additional corn for his farm operation. The record also reveals that he purchased substantial amounts of corn for his stockyard operation.Since the petitioner did not have any fixed price contract for feed, the proper way for him to protect against increased feed costs would have been to go long, or purchase corn contracts and sell them as he purchased the actual corn needed for consumption. Yet the vast majority of petitioner's corn transactions in the market were short sales. Without explanatory evidence, these transactions appear unrelated to petitioner's business and speculative on their face. The petitioner's only need to sell short would have been to hedge against corn price decreases, which would have affected the value of the corn he actually raised. This could have been done with the short sale of only a limited number of corn contracts. The volume of the petitioner's transactions in the corn market is far in excess of the volume needed to perform such a hedge. A large discrepancy between futures and actuals has been held to be*259 cogent evidence that the futures were acquired as an investment and not as a hedge. See Sicanoff Vegetable Oil Corporation, supra.Finally, in both petitioner's corn and cattle commodity transactions there have been constant rapid changes of position from long to short and vice versa. Such unexplained constant changes of position have been held to constitute evidence that a taxpayer has been speculating. Kenneth S. Battelle, supra, 26 at 127. Faced with all of the above, it is incumbent upon the petitioner to explain just what hat he was wearing when he engaged in over 178 transactions in the commodities market. Was he speculating or hedging? Statements by the petitioner, an interested party, to the effect that he intended his transactions to be a hedge are not conclusive. Lakewood Manufacturing Company v. Commissioner, 453 F.2d 451 (C.A. 6, 1972), affirming a Memorandum Opinion of this Court. Petitioner's expert witness was the only party to offer relevant testimony for the petitioner. This witness was a commodity broker; however, he was not the petitioner's broker at the times of the questioned transactions, and his testimony*260 was limited to three or four hypothetical transactions. Testimony of such a general nature is not sufficient to carry the petitioner's burden in the case at bar. Decision will be entered for the respondent. Footnotes1. These totals reflect separate purchases and sales amounting to over 500 individual transactions. ↩1. Position open for 10 days or less. ↩1. Position open for 10 days or less. ↩1. Position open for 10 days or less. ↩1. Position open for 10 days or less. ↩1. SEC. 1233. GAINS AND LOSSES FROM SHORT SALES. (a) Capital Assets. - For purposes of this subtitle, gain or loss from the short sale of property shall be considered as gain or loss from the sale or exchange of a capital asset to the extent that the property, including a commodity future, used to close the short sale constitutes a capital asset in the hands of the taxpayer. ↩2. For more enlightening definitions of hedging transactions, see L. M. Muldrow, 38 T.C. 907 (1962), at 913; Sicanoff Vegetable Oil Corporation, 27 T.C. 1056, 1067-1068 (1957), reversed on other grounds 251 F.2d 764 (C.A. 7, 1958); Wool Distributing Corporation, 34 T.C. 323 (1960); and Stewart Silk Corporation, 9 T.C. 174, 178↩ (1947). 3. A party can also cover himself against the risk that corn prices would drop and competing farmers would have been able to fatten their cattle on cheaper feed than the corn the party raised on his own farm. This is done by the party assuming a "short" position in the futures market then closing out his short position as he used his own corn. ↩